JEW

*[handwritten initials]*

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2020 CA 0171

EPPIE ATON RODRIGUEZ

VERSUS

MICHAEL JANINE RODRIGUEZ, JR.

JUDGMENT RENDERED: ___**NOV** 0 6 **2020**___

* * * * * * *

Appealed from the
Twenty-Third Judicial District Court
In and for the Parish of Ascension • State of Louisiana
Docket Number 125,469 • Division C
The Honorable Katherine Stromberg, Judge Presiding

* * * * * * *

Louis J. Cosenza                         ATTORNEY FOR APPELLANT
Gonzales, Louisiana                      PLAINTIFF—Eppie Rodriguez


Keyojuan Gant Turner                     ATTORNEYS FOR APPELLEE
Travis Turner                            DEFENDANT—Michael Rodriguez
Gonzales, Louisiana


* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

WRC by JEW

Chutz, J. Concurs in result without reasons

**WELCH, J.**

In these divorce proceedings, Eppie Aton Rodriguez appeals a judgment in favor of Michael Janine Rodriguez, denying her request for interim spousal support. For reasons that follow, we reverse and render judgment awarding Ms. Rodriguez interim spousal support.

## BACKGROUND

The parties herein were married on January 26, 2009, and thereafter, established their matrimonial domicile in Ascension Parish, Louisiana. On May 6, 2019, Ms. Rodriguez commenced these proceedings by filing a petition seeking a divorce, partition of community property, and relief incidental to the divorce, including, but not limited to, an award of interim spousal support. After a hearing on the issue of interim spousal support, the trial court issued written reasons denying Ms. Rodriguez's request for interim spousal support on the basis that she failed to demonstrate the need for interim spousal support because she was voluntarily unemployed and had the means to provide for her support. A judgment in accordance with the trial court's ruling was signed on November 8, 2019 and it is from this judgment that Ms. Rodriguez has appealed.[1]

On appeal, Ms. Rodriguez contends that the trial court erred in: (1) considering Ms. Rodriguez's means when determining whether she was in need of support, and (2) finding that Ms. Rodriguez was capable of employment.

## LAW AND DISCUSSION

In a proceeding for divorce, the court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111 and 113. Interim spousal support is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she

---

[1] A judgment denying an award of interim spousal support is appealable in accordance with La. C.C.P. art. 3943. See **Malone v. Malone**, 282 So.2d 119, 121 (La. 1973).

2

enjoyed while residing with the other spouse, pending the litigation of the divorce. **Lambert v. Lambert**, 2006-2399 (La. App. 1st Cir. 3/23/07), 960 So.2d 921, 928. A spouse's right to claim interim spousal support is grounded in the statutorily imposed duty on spouses to support each other during marriage, and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. *Id.* Interim support preserves parity in the levels of maintenance and support and avoids unnecessary financial dislocation until a final determination of support can be made. *Id.*

The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such support. *Id.* To determine whether a claimant spouse is entitled to receive interim support, the trial court must assess the needs of that spouse, the ability of the non-claimant spouse to pay, and their standard of living during the marriage. *Id.* A claimant demonstrates the need for interim spousal support if she establishes that she lacks sufficient income or the ability to earn a sufficient income to sustain the style or standard of living that she enjoyed while she resided with the other spouse. *Id.* The needs of the claimant spouse have been defined as the total amount sufficient to maintain that spouse in a standard of living comparable to that enjoyed prior to the separation, limited only by the other spouse's ability to pay. **Lambert**, 960 So.2d at 929. Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. *Id.* If the needs of the claimant spouse surpass the ability of the other spouse to pay, interim spousal support should be fixed at a sum which will as nearly as possible be just and fair to all parties involved. *Id.* In assessing a spouse's ability to pay, the court must consider his or her means. *Id.* "Means" includes any resource from which the wants of life may be supplied, requiring an assessment of the entire financial condition of the payor spouse. *Id.* "Entire

3

financial condition" is not limited to income, but also includes any resource from which his or her needs can be supplied, including a spouse's earning capacity. *Id.*

The trial court is vested with much discretion in determining whether to make an award of interim spousal support, and such determination will not be disturbed absent a clear abuse of discretion. **Lambert,** 960 So.2d at 928; see also **Martello v. Martello,** 2006-0594 (La. App. 1st Cir. 3/23/07), 960 So.2d 186, 192. Although the trial court is vested with much discretion in determining whether to interim spousal support, factual findings underlying a trial court's decision are reviewed under the manifest error standard of review. See **Kirkpatrick v. Kirkpatrick,** 41,851 (La. App. 2nd Cir. 1/24/07), 948 So.2d 390, 394. When the court of appeal finds that a manifest error of material fact was made in the trial court, the court of appeal is required, whenever possible, to redetermine the facts *de novo* from the entire record and render a judgment on the merits. **Ferrell v. Fireman's Fund Ins. Co.,** 94-1252 (La. 2/20/95), 650 So.2d 742, 745.

In this case, in order to be entitled to interim spousal support, Ms. Rodriguez had the burden of proving not only that she lacked sufficient income to maintain the standard of living that she enjoyed while married, but also that Mr. Rodriguez had the ability to pay. Ms. Rodriguez's income and expense affidavit, which was introduced into evidence, reflects that her monthly expenses were approximately $3,267.00 and that she has no income. Other than questioning the amount of the monthly expense listed for food ($1,200.00), none of the monthly expenses listed in Ms. Rodriguez's affidavit were challenged by Mr. Rodriguez as being beyond Ms. Rodriguez's style or standard of living that she enjoyed during her marriage to Mr. Rodriguez. According to Ms. Rodriguez's testimony, she moved to California after separating from Mr. Rodriguez in May 2019 and is currently renting a room in a home in California for $1,000.00 per month. When Ms. Rodriguez left the matrimonial domicile, she withdrew $35,000.00 from the community checking

4

account and she has approximately $8,000.00 left of those funds. Ms. Rodriguez is currently unemployed and has no income; however, she has secretarial training, as well as certification as an EKG technician, a phlebotomist, and nursing assistant. Ms. Rodriguez last worked as a patient care technician at an assisted living facility; however, in 2012, she sustained injuries to her back and hands on the job when a patient fell. As a result of that injury, she underwent a spinal fusion. Ms. Rodriguez was also subsequently injured in a car accident and sustained a lumbar spine injury. Ms. Rodriguez owns a home in the Philippines, which she purchased with funds from her personal injury settlement, and her family members are currently living in the home rent free. Ms. Rodriguez was denied disability benefits when she sought them during the marriage on the basis of Mr. Rodriguez's income; however, she has not attempted to procure disability benefits since separating from Mr. Rodriguez. Photos were admitted into evidence depicting Ms. Rodriguez exploring caves, attempting to enter a lake from a pier, standing on the bow of a boat, exercising, walking around Manhattan, and climbing stairs.

According to Mr. Rodriguez's testimony, the whole time he was married to Ms. Rodriguez, she never earned more than minimum wage, and she had not worked since 2012, when she was injured. Mr. Rodriguez was aware that Ms. Rodriguez had been injured, had undergone a cervical fusion, and that she hurt when the weather was cold; however, he questioned how much pain she was actually in because he saw a Facebook post about her climbing 724 steps at one time. Mr. Rodriguez testified that he was a boilermaker by trade, but he is retired and is receiving a monthly pension benefit. According to Mr. Rodriguez's income and expense affidavit, which was introduced into evidence, he has a net monthly income from his pension in the amount of $3,133.00, and his total monthly expenses are approximately $3,041.00, leaving him with approximately $92.00 per month. However, included with Mr. Rodriguez's monthly expenses was "Wife

5

Allowance" in the amount of $600.00, which Mr. Rodriguez admitted he had not paid since Ms. Rodriguez left the matrimonial domicile and moved to California. In addition, Mr. Rodriguez also testified that he had investment accounts and/or other liquid assets totaling approximately $180,000.00.

Based on this evidence, the trial court ruled as follows:

> The [c]ourt finds that [Ms. Rodriguez] has not demonstrated that she has a need for support. She is currently unemployed, though she has formal training and various certifications that would allow her to work. She owns a home in the Philippines that could generate rental income, but is not because [Ms. Rodriguez] allows her family to reside there for free. Though [Ms. Rodriguez] testified to being in great pain from her injuries such that she cannot work, the record contains various photographs of her engaging in physical activity, such as dancing, boating, and climbing, appearing to be enjoying herself. Furthermore, the [c]ourt was entirely unconvinced by [Ms. Rodriguez's] testimony regarding her pain from her injuries, as she appeared to be greatly exaggerating her symptoms. Accordingly, [Ms. Rodriguez's] claim for interim spousal support is denied.

On appeal, Ms. Rodriguez contends that the trial court erred when it considered Ms. Rodriguez's property, i.e., the funds that she withdrew from the community checking account, as income and in determining whether she was in need of support. However, the trial court's written reasons do not reflect that it considered the funds she removed from the community checking account; rather, the trial court simply noted this in setting forth the factual background of the case. The trial court's written reasons reflect that it declined to make an award of interim spousal support based on its factual finding that Ms. Rodriguez was voluntarily unemployed, was exaggerating the pain from her injuries, and thus, she had the ability to earn a sufficient income to sustain the style or standard of living that she enjoyed while she resided with Mr. Rodriguez.

Ms. Rodriguez next contends that the trial court erred in determining that she had the ability to earn sufficient income to sustain the style or standard of living that she enjoyed while she resided with Mr. Rodriguez. We agree. Regardless of

6

whether Ms. Rodriguez is exaggerating her symptoms and/or her pain from her injuries, as determined by the trial court, the uncontradicted evidence in the record established that Ms. Rodriguez was a 56-year old Filipino woman, that she had little formal education and limited English language skills, that she has medical issues requiring medication, that she has past physical injuries, that she has been unemployed since 2012 (*i.e.,* for the majority of her marriage), and that Ms. Rodriguez's employment history prior to 2012 reveals that she earned only minimum wage. The record also establishes that during the parties' marriage, Mr. Rodriguez gave Ms. Rodriguez an allowance of $600.00 per month. Even assuming Ms. Rodriguez could return to work, as determined by the trial court, based on her employment history, her earning income potential would be approximately minimum wage, which would be insufficient to meet her monthly living expenses, as reflected on her income and expense affidavit. Thus, we find Ms. Rodriguez met her burden of proving she was in need of interim spousal support by establishing that she lacked sufficient income or the ability to earn a sufficient income to sustain the style or standard of living that she enjoyed while she resided with Mr. Rodriguez and the trial court manifestly erred in concluding otherwise.

Since the trial court determined that Ms. Rodriguez failed to prove that she was in need of interim spousal support, the trial court made no factual findings with regard to Mr. Rodriguez's means or ability to pay interim spousal support. On appeal, Ms. Rodriguez maintains that Mr. Rodriguez has the means or ability to pay interim spousal support in the full amount of her monthly expenses ($3,267.00). In addition to Mr. Rodriguez's monthly pension benefit, Ms. Rodriguez points to additional retirement and investment accounts that Mr. Rodriguez has, and she also claims that he has the capacity to earn more than his pension benefits. However, we find no merit to this contention. The record

establishes that Mr. Rodriguez is sixty years old and that he is retired. While a spouse's earning capacity and/or assets may be considered in determining whether a spouse has the means or ability with which to pay interim spousal support, the law does not require a spouse who is retired and receiving a pension or retirement benefit to return to the workforce or to deplete their liquid assets in order to pay support to the other spouse. Rather, it is merely a factor that may be considered by the court.

Considering Mr. Rodriguez's net monthly income of $3,133.00, as reported on his income and expense affidavit, and subtracting his current living expenses of $2,441.00 (*i.e.*, $3,041.00 minus the $600.00 allowance to Ms. Rodriguez that he admitted he was not paying), Mr. Rodriguez has approximately $692.00 remaining per month. As such, we must conclude that Mr. Rodriguez has the means or ability to pay interim spousal support to Ms. Rodriguez. Bearing in mind the purpose of interim spousal support, as well as the evidence establishing that Mr. Rodriguez customarily gave Ms. Rodriguez a monthly allowance during the parties' marriage, we hereby render judgment in favor of Ms. Rodriguez ordering Mr. Rodriguez to pay Ms. Rodriguez interim spousal support in the amount of $600.00 per month (the amount of the allowance customarily given by him), retroactive to the date of judicial demand, which award shall terminate in accordance with the provisions set forth in La. C.C. art. 113.

## CONCLUSION

For all of the above and foregoing reasons, the November 8, 2019 judgment of the trial court is reversed and judgment is rendered in favor of Eppie Aton Rodriguez, awarding her the sum of $600.00 per month in interim spousal support, retroactive to the date of judicial demand. All costs of this appeal are assessed to the defendant/appellee, Michael Janine Rodriquez.

**REVERSED AND RENDERED.**